UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff/Respondent, ) | No. 6:16-CR-26-GFVT-REW |
| ) | No. 6:18-CV-74-GFVT-REW |
| v. ) | |
| ) | |
| DEBBIE JONES, ) | RECOMMENDED DISPOSITION |
| ) | |
| Defendant/Movant. ) | |

*** *** *** ***

Movant, Debbie Jones, is a federal inmate. DE #37 (Motion), at 1. On March 7, 2018,[1] Jones filed a *pro se*[2] motion under 28 U.S.C. § 2255. *See generally id.* The United States responded in opposition. DE #47 (Response). Jones replied. DE #48 (Reply). On the United States's motion, the Court found that, as to communications necessary to litigate the claims of ineffective assistance, Jones waived attorney-client privilege. DE #46 (Order). The matter is ripe for consideration. Per normal practice, the District assigned the matter to the undersigned for a recommended disposition. The Court **RECOMMENDS** that the District Judge fully **DENY** § 2255 relief (DE #37) and issue **NO** Certificate of Appealability.

---

[1] This filing date reflects the prison mailbox rule. *See Richard v. Ray*, 290 F.3d 810, 812-13 (6th Cir. 2002) (per curiam). Here, Jones declared under penalty of perjury that she executed and placed the § 2255 motion in the prison mailing system on March 7, 2018. DE #37, at 12.

[2] *Pro se* petitions receive a comparatively lenient construction by the Court. *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985) (noting that "allegations of a *pro se* habeas petition, though vague and conclusory, are entitled to a liberal construction" including "active interpretation" toward encompassing "any allegation stating federal relief" (citations and internal quotation marks omitted)).

## I. BACKGROUND INFORMATION

On June 23, 2016, a federal grand jury charged Jones with (1) PWID 50+ grams of meth, in violation of 21 U.S.C. § 841(a)(1), and (2) being a felon in possession, in violation of 18 U.S.C. § 922(g)(1). DE #1. Jones pleaded guilty to Count 1, pursuant to a plea agreement, on October 24, 2016. DE ##24 (Rearraignment Minute Entry); 22 (Plea Agreement). Judge Van Tatenhove sentenced Jones on March 6, 2017. DE #30 (Sentencing Minute Entry). Movant received a total prison sentence of 120 months, the mandatory minimum, followed by 8 years of supervised release. DE #31 (Judgment). Jones did not appeal. On March 7, 2018, she timely submitted a § 2255 motion to vacate. DE #37. The Government responded. DE #47. Jones replied. DE #48. The motion stands ripe for review. The Court rejects all of Movant's claims and recommends dismissal. No basis exists for a Certificate of Appealability.

## II. STANDARD OF REVIEW

Under 28 U.S.C. § 2255, a federal prisoner may obtain post-conviction relief if her sentence violates the Constitution or federal law, the federal court lacked jurisdiction to impose such sentence, or the sentence exceeds the maximum authorized by law. 28 U.S.C. § 2255(a); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003) ("In order to prevail upon a § 2255 motion, the movant must allege as a basis for relief: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" (quoting *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001))). A defendant alleging a constitutional basis must establish "an error of constitutional magnitude" and show that the error had a "substantial and injurious effect or influence on

the proceedings" in order to obtain § 2255 relief. *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 113 S. Ct. 1710, 1721-22 (1993)). When alleging a non-constitutional error, a defendant must prove that the error constituted a "'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 82 S. Ct. 468, 471 (1968)); *see also Watson*, 165 F.3d at 488. In making a § 2255 motion, a movant generally bears the burden of proving factual assertions by a preponderance of the evidence. *McQueen v. United States*, 58 F. App'x 73, 76 (6th Cir. 2003) (per curiam) ("Defendants seeking to set aside their sentences pursuant to 28 U.S.C. § 2255 have the burden of sustaining their contentions by a preponderance of the evidence.").

## III.   ANALYSIS

In the § 2255 motion, Jones cursorily asserts three ineffective assistance of counsel arguments.[3] The Court evaluates each in turn.

### A.   *Ineffective Assistance of Counsel*

When asserting an ineffective assistance claim, a movant must prove both deficient performance and prejudice. *Strickland v. Washington*, 104 S. Ct. 2052, 2064 (1984); *Campbell v. Bradshaw*, 674 F.3d 578, 586 (6th Cir. 2012); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006) (noting that a movant must prove ineffective assistance by a preponderance of the evidence). In order to prove deficient performance, a movant must show that "counsel made errors so serious that counsel was not

---

[3] At both rearraignment (under oath) and sentencing, Jones certified full satisfaction with her attorney's "advice and counsel and . . . representation[.]" DE ##42 (Rearraignment Tr.), at 13-14; 43 (Sentencing Tr.), at 4. Movant throws a few new, though equally cursory, complaints in her reply. *See* DE #48.

functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 104 S. Ct. at 2064. A movant meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *Id.* at 2064-65. Judicial scrutiny of counsel's performance, however, is "highly deferential," featuring a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 2065.

Deficient performance is considered constitutionally prejudicial only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 2064. In order to prove prejudice, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 2068. When evaluating prejudice, courts generally must take into consideration the "totality of the evidence before the judge or jury." *Id.* at 2069. "In the context of pleas a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012).[4]

*First*—Jones asserts, in the entirety, that, after being asked "to sign a plea agreement per speaking with my attorney," Hon. Liannie Parahoo, she (Jones) asked Ms. Parahoo "for my points per the sentecing [sic] guidelines but she [Ms. Parahoo] couldn't give them to me until I had signed the plea instead of giving me the point guidelines then me signing the plea." DE #37, at 4. Movant does not articulate what, precisely, she means

---

[4] *Lafler* was a § 2254 case, but the analysis also generally applies to § 2255 theories. *See Winkler v. United States*, Nos. 3:08-cr-014, 3:10-cv-210, 2013 WL 4494971, at *2 (E.D. Tenn. Aug. 20, 2013) (A § 2254 case's "reasoning, nevertheless, applies to cases filed by federal prisoners under 28 U.S.C. § 2255 because §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally applies to the other.").

4

by "points per the sente[n]cing guidelines" or "point guidelines," but the Court assumes, under a liberal interpretation, she is referencing her likely Guidelines range. *See also* DE #48 (Reply), at 1 (clarifying that the complaint concerns not "being told her guidelines" pre-plea).

There is no ineffectiveness regarding Ms. Parahoo's alleged comment. Quite to the contrary, it is an accurate statement of the law and concerning federal criminal practice. Ms. Parahoo (or any other attorney) could not have advised Movant exactly what her Guidelines range would be prior to pleading. *See, e.g.*, *United States v. Hunter*, Nos. 11-54-GFVT-REW, 14-7365-GFVT-REW, 2015 WL 4622592, at *4, *6 (E.D. Ky. July 30, 2015) (stating "that a guideline range was indeterminate (even unknowable) until the District Court ruled on objections to the presentence report"); *United States v. Nasir*, Nos. 12-102-JMH-CJS-1, 14-7386-JMH-CJS, 2016 WL 8376404, at *3 (E.D. Ky. Nov. 30, 2016) (noting that the presentence report is prepared "after the plea but before sentencing"); *United States v. Smith*, No. 3:08-CR-31-JMH, 2011 WL 1885390, at *10 (E.D. Ky. May 18, 2011) ("Further, this Court carefully explained to Smith during the rearraignment that the Guidelines would apply in his case and that his potential sentence could only be evaluated once the PSR was prepared and Guidelines calculation completed for the Court's review.").

The sworn rearraignment colloquy confirms this understanding of sequence. Jones, under oath, told Judge Van Tatenhove that, prior to signing the plea agreement, no one promised her that she would receive a particular sentence if she pleaded. DE #42, at 15-16. The District Judge informed Movant that the plea agreement "doesn't bind me" and that he was "not required under this plea agreement to impose a particular sentence."

5

*Id.* at 19. Judge Van Tatenhove also directly advised Jones, an admitted high-quantity meth player, that she was facing "a statutory mandatory minimum sentence of ten years in federal prison" and, indeed, a maximum term of "up to life in prison." *Id.* at 22. The plea agreement (which she read and signed) told her the same thing. DE #22, at ¶ 4. Most importantly, Judge Van Tatenhove described, in detail, the procedure leading up to sentencing:

> Now, you and Ms. Parahoo have spent a lot of time talking about sentencing, and I know one of the first questions you asked your lawyer was, 'Well, how much time do you think I'll have to do if I plead guilty?' Right? I mean, every defendant asks that question. There's nothing wrong with that.
>
> You understand, I think, that in the coming weeks, you're going to sit down with the probation officer who's going to do an interview and then prepare a report. It's called a presentence report. And it has a lot of information in it about your health, your background, your education, your criminal history, but probably most significantly for you it's going to have a recommended sentence. We look at what you've pled guilty to, the amount of drugs involved, your past criminal conduct, and then a rather complicated regulatory framework, there's a recommendation that's produced from all of that consideration. Before I make a decision about your sentence, you'll get a copy of that report, and [the prosecutor] gets one and I'll get one. In working with your lawyer, you can raise objections with regard to any of the -- of the information that's contained in the report that you think is incorrect. You might in fact think that the recommended sentence is not correct, that it's too harsh. That's fine. Again, your lawyer can file objections, and we'll have a hearing, and I'll rule on those objections. I might agree; I might disagree, but we can't know today how all that will turn out.
>
> So here's the point of all of this. If we get to sentencing, and the recommended sentence turns out to be higher than you think it's going to be today, you would be disappointed, but you could not use that as a reason to say, Judge, I don't want to plead guilty anymore. I now want to go to trial. Under the law, I could not allow you to withdraw your guilty plea.

DE #42, at 23-25. Jones swore she understood. *Id.* at 25. Indeed, at the conclusion of rearraignment, after Judge Van Tatenhove directed the preparation of a PIR, Movant

6

asked the District Judge whether, "after the probation report and stuff," there would be "a slight chance that I might get in under the ten years?" *Id.* at 32. The District Judge[5] advised her to speak with her attorney on the issue, but the comment confirmed Jones's understanding that (1) a mandatory minimum existed and (2) the Guideline range (and ultimate sentence) depended on "the probation report and stuff."

The plea agreement, signed by Jones, likewise expresses the understanding that the parties "recommend[ed]" certain "sentencing guideline calculations," but that they retained the ability to "object to or argue in favor of other calculations." DE #22, at ¶ 5 (also stating that the recommendations do "not bind the Court"). Additionally, Jones agreed that there was no agreement concerning her criminal history category, *id.* at ¶ 6, a central element to an accurate Guidelines calculation. As Ms. Parahoo informed her client, it is simply impossible, pre-plea, for any number of interlocking reasons, to precisely calculate a defendant's ultimate Guidelines range.[6]

---

[5] The Court stressed previously its typical lack of sentencing discretion when a mandatory minimum applies. DE #42, at 22.

[6] Only in reply, Jones generically asserts that she "was denied the right to see and hear all evidence against her in the form of discovery." DE #48, at 1. The Court, foundationally, rejects issues first broached in reply. *Wright v. Holbrook*, 794 F.2d 1152, 1156 (6th Cir. 1986). Further, processing the complaint under *Strickland*, Movant fails to connect meaningfully an alleged lack of discovery (when she admits "she was shown and listened to parts of a DVD") to her decision to plead guilty. *See, e.g.*, *United States v. Walton*, No. 5:10-CR-78-JMH-EBA, 2014 WL 2004472, at *10-11 (E.D. Ky. May 15, 2014) (rejecting a failure to provide discovery *Strickland* claim). Jones "does not indicate when [s]he requested the discovery, how often [s]he requested it, what the discovery materials contain, or why they would have influenced h[er] decision to plead guilty." *United States v. Stewart*, No. 08-124-ART, 2011 WL 382206, at *3 (E.D. Ky. Jan. 4, 2011), *adopted in* 2011 WL 381951 (E.D. Ky. Feb. 2, 2011). The District Court should reject § 2255 relief on such a vague, speculative, conclusory claim, devoid of factual particularity and untethered to any case decision of consequence. Under oath, at rearraignment, Jones confirmed that she "had enough time to sit down with Ms. Parahoo" and "talk to her about the case." DE #42, at 13-14. She factually confessed and validated the empirical basis for the plea.

Per this discussion, the Court rejects Jones's claim of ineffectiveness regarding counsel's inability to advise, pre-plea, what Movant's Guidelines range, or "points," would be. Ms. Parahoo gave Jones accurate advice, not ineffective assistance.[7]

*Second*—Jones claims, again quoting the totality, that Ms. Parahoo "told me that the plea agreement was for 10 years but she was 95% sure she could talk it down to 5 to 7 years based on my age, health and medical issues. She did not request nor received [sic] the medical information as she said she would prior to or since my sentencing." DE #37, at 5; *see also* DE #48, at 1.

As to the first imbedded complaint, the Court rejects any ineffectiveness regarding a comment concerning a 95% possibility counsel could "talk [the sentence] down . . . based on [Jones's] age, health[,] and medical issues" (even assuming that Jones's factual assertion is true, which Parahoo disputes, *see* DE #47-1, at ¶ 38). As above, Jones does not detail what she means by counsel "talking" the sentence "down," but she clearly understood, prior to offering her guilty plea, that she unequivocally faced a 10-year mandatory minimum (indeed, the possibility of life imprisonment) if she admitted her guilt. DE ##42, at 22; 22, at ¶ 4. Jones[8] knew the consequences she faced as

---

[7] Further, Jones received the statutory mandatory minimum sentence, of which Judge Van Tatenhove explicitly advised her at rearraignment. The mandatory minimum, not the Guidelines range or Movant's "points," ultimately defined the sentence imposed. *Compare* DE #39 (PIR), at ¶ 67 (120 month mandatory minimum)*, with id.* at ¶ 68 (57-71 month Guideline range); *see also* DE #43, at 20 (Judge Van Tatenhove: "[M]y hands are tied here."). For these many cascading reasons, Jones's concluding assertion that "[i]f her guidelines had been known she would not have signed [a] Plea Agreement for 10 years (mandatory)," DE #48, at 1, rings hollow. Nothing about Movant knowing her Guidelines range pre-plea (which, again, was an impossibility), as the Court has thoroughly explained, would have impacted knowledge or application of the mandated 10 years, in this scenario. The Guidelines are advisory; the mandatory minimum is, as the name suggests, mandatory. The Court fully assured Jones's cognizance of this.

[8] Jones does not identify when the comment occurred. If it was pre-plea, the agreement content and detailed rearraignment colloquy made clear that the mandatory minimum

8

a result of pleading guilty (and knew the mandated imprisonment term exceeded 5-7 years), and she chose, nevertheless, to confess her crime.[9]

Judge Van Tatenhove, based on the Rule 11 colloquy, found Jones competent and capable of entering an informed plea, and that the plea was knowing and voluntary. DE #42, at 31; *see also* DE #22, at ¶ 12. There is no reason, on this record (including where the District Judge accurately advised Movant of the mandatory and possible penalties), to doubt those findings or hold Parahoo ineffective. *See, e.g.*, *United States v. Pola*, 703 F. App'x 414, 423 (6th Cir. 2017) ("When an ineffective-assistance claim is based on misleading information regarding the consequences of a plea, a proper plea colloquy is generally deemed to cure any misunderstanding the defendant may have had about the consequences of the plea. . . . The court's proper advisement of rights is thus deemed to 'foreclose' any showing of actual prejudice attributed to counsel's erroneous advice, because the defendant is deemed bound by his statements in response to the court's inquiry. . . . Otherwise, the plea colloquy process would be rendered meaningless if a defendant could reopen the record by later asserting that actually, [s]he misunderstood."); *Ewing v. United States*, 651 F. App'x 405, 410 (6th Cir. 2016) (rejecting ineffectiveness when a lawyer promised a defendant he would receive 144 months when the plea colloquy made clear "that the district judge, and no one else, would determine the final sentence"); *Ramos v. Rogers*, 170 F.3d 560, 565 (6th Cir. 1999).

As to the second imbedded complaint, Jones utterly fails to detail what "medical information" Ms. Parahoo "said she would" request or receive regarding sentencing.

---

applied. If it was post-plea, the alleged optimistic forecast would not have led to a misinformed plea. Jones, with the burden, ignores the chronology of the claimed remark.
[9] Further, Ms. Parahoo advises (with no Jones opposition) that Movant "was unable to provide any substantial information which law enforcement could use," thus precluding a Governmental § 5K1.1 or § 3553(e) motion. DE #47-1, at ¶ 24.

9

Movant, though the party with the burden, presents to the Court none of the "medical information" she faults her attorney for not requesting or receiving. The Court cannot, therefore, meaningfully evaluate such a generic complaint, completely divorced from factual particularity. The Court recommends dismissal of this argument independently on this basis.

Jones, additionally, fundamentally fails to connect this criticism with the sentencing result. Parahoo made the Court aware of Jones's many personal and health issues in the sentencing memorandum. DE #28, at 2-4 (noting Jones's "drug addiction," "history of abuse," "several traumatic experiences," and "significant medical issues, including recurrent shingles and numerous past surgeries," as well as "chronic nightmares and PTSD stemming from her abuse and traumatic experiences"). Jones herself informed the District Judge of relevant health problems at rearraignment. DE #42, at 8-13. Counsel further described Jones's history and characteristics orally at sentencing. DE #43, at 10-13. The PIR, which Judge Van Tatenhove considered as part of sentencing, comprehensively detailed much of the same—and additional—content. DE #39, at ¶¶ 46, 47, 51-59. The District Judge, in explaining the sentence, fully recognized the expressed medical issues. DE #43, at 14-18. Jones, in the § 2255 materials, does not explain how additional (but non-specific) "medical information" would have altered the sentencing outcome. Judge Van Tatenhove and the parties fully considered Jones's medical concerns at sentencing. Again, she received the lowest sentence possible based on her record and the crime she admitted, and § 841(b)(1)(B) contains no generalized health-based exception. The District Court should reject § 2255 relief on this argument.[10]

---

[10] To the extent, only in reply, Jones complains that she "had not seen her revised Pre Sentence Report," DE #48, at 1, the record belies that assertion. At sentencing, Jones told

10

*Third*—Jones, *in toto*, writes, "When I realized at sentencing that my 120 month plea agreement was going to hold I asked my attorney if I could change my mind. She said no that I was already here for sentencing." DE #37, at 6.

As above, the Court views this situation (again assuming Jones's factual description is true, which Ms. Parahoo disputes, *see* DE #47-1, at ¶ 36) as counsel accurately advising Jones. At rearraignment, as the Court has already recounted, Judge Van Tatenhove told Movant that, "if we get to sentencing, and the recommended sentence turns out to be higher than you think it's going to be," he "could not allow you to withdraw your guilty plea." DE #42, at 25. Jones professed her understanding. *Id.* Judge Van Tatenhove reiterated that if Movant were "disappointed" after the Court considered "seven different factors" and decided on a sentence, that would still "not [be] a reason to withdraw your guilty plea and then go to trial." *Id.* at 25-26. At sentencing, Jones never raised a desire to withdraw her plea (or even a concern related to that topic) with the District Judge or in open court. To the contrary, while Movant orally "hop[ed]" and "thought [her] sentencing could go within" the Guidelines, she acknowledged that "it can't." DE #43, at 14. Again, prior to offering a guilty plea, Jones was fully aware that she faced a mandatory minimum of 10 years, and the possibility of life, in federal prison, and she chose to plead guilty regardless. DE ##42, at 22; 22, at ¶ 4.

The Court, thus, rejects any insinuation of ineffectiveness. Ms. Parahoo gave Jones accurate advice on this issue. Application of a mandated minimum, as forecast in an accepted plea agreement, would not justify plea withdrawal at sentencing. Jones's

---

Judge Van Tatenhove that she "g[o]t a copy" of the PIR and "had enough time to read that document [and] to talk to Ms. Parahoo about it[.]" DE #43, at 2-3. Indeed, she had "a few minor" factual complaints about the content. *Id.* at 2-4. Nothing in the PIR would, of course, impact the mandatory minimum.

11

"realiz[ation]" at sentencing that she would actually get 120 months would not have given her the right to withdraw her plea. *See, e.g.*, DE #42, at 25-26 (Judge Van Tatenhove so informing Jones at rearraignment); *United States v. Turpin*, 155 F. App'x 887, 892-93 (6th Cir. 2005) ("Even if Defendant's previous attorney gave erroneous advice as to his estimate of Defendant's sentence, Defendant could not withdraw her plea. The rationale is that the district court, by explaining that Defendant's sentence would depend on her criminal history category, by explaining that such category had not yet been calculated, and by explaining the court had the ultimate power in deciding the sentence, made clear to Defendant that her counsel's . . . estimate would have no weight in its sentencing decision."); *United States v. Stephens*, 906 F.2d 251, 253 (6th Cir. 1990) (holding that "the mere fact that an attorney incorrectly estimates the sentence a defendant is likely to receive is not a 'fair and just' reason to allow withdrawal of a plea agreement" (quoting now-Rule 11(d)(2)(B)); *United States v. Martin*, 668 F.3d 787, 794 (6th Cir. 2012) ("A defendant has no right to withdraw h[er] guilty plea[.]"); *id.* at 796 (treating a defensive concern "with the length of the sentence and not the adjudication of guilt," Jones's only stated concern here, as weighing "against withdrawal" of the plea); *United States v. Burney*, 75 F.3d 442, 445 (8th Cir. 1996) ("A defendant's misapprehension of the application of the Guidelines to h[er] sentencing does not constitute a fair and just reason for withdrawing a plea so long as the defendant was told the range of potential punishment and that the Guidelines would be applied to determine h[er] sentence."); *United States v. Redmond*, 667 F.3d 863, 874 (7th Cir. 2012) ("Avery's objections to his career offender status do not constitute a fair and just reason to allow him to withdraw his plea."). This argument states no basis for § 2255 relief.

Thus, Jones simply criticizes Ms. Parahoo for telling her exactly what the Court had said and what the law requires—sentencing disappointment is not a basis for plea withdrawal. The District Court should reject the claim.

### B.     *Evidentiary Hearing*

Jones does not request an evidentiary hearing. Nevertheless, the Court must hold one unless "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Further, no hearing is necessary "where the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Huff v. United States*, 734 F.3d 600, 607 (6th Cir. 2013) (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)) (internal quotation marks removed). Jones's claims do not warrant a hearing; the § 2255 motion filings and record of the case conclusively show, for the reasons stated above, that her claims fail. There are no contested factual issues that justify a hearing. The record, which needs no further development, forecloses relief.[11]

## IV.   CERTIFICATE OF APPEALABILITY

A Certificate of Appealability may issue where a movant has made a "substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). This standard requires a movant to demonstrate that "reasonable jurists would find the district court's

---

[11] To the extent, only (again) in reply, Jones asserts a due process violation based on not being appointed counsel to litigate the § 2255 matter, *see* DE #48, at 2, the Constitution provides no right to counsel in collateral proceedings. *See, e.g.*, *Oliver v. United States*, 961 F.2d 1339, 1343 (7th Cir. 1992); *Abdus-Samad v. Bell*, 420 F.3d 614, 632 (6th Cir. 2005); *United States v. Pought*, No. 11-CR-20449, 2015 WL 7307971, at *14 (E.D. Mich. Nov. 20, 2015); *United States v. Edkins*, No. 1:05-CR-151, 2013 WL 542473, at *6 (W.D. Mich. Feb. 12, 2013). Movant included no request for appointed counsel when she filed the § 2255 motion.

13

assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see also Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. *See* 28 U.S.C. § 2253(c)(3); *Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissal on procedural grounds, as to when a Certificate of Appealability should issue, the movant must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 120 S. Ct. at 1604. Movant has not made a "substantial showing" as to any claimed denial of rights; all her claims, for the reasons explained, conclusively fail. Reasonable jurists would not find the Court's determinations debatable. Accordingly, the Court recommends that the District Court entirely deny a Certificate of Appealability.

## V.     RECOMMENDATION

For the reasons discussed, the Court **RECOMMENDS** that the District Judge wholly **DENY** § 2255 relief (DE #37) and issue **NO** Certificate of Appealability.

\*   \*   \*   \*   \*

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rule 8(b), Rules Governing Section 2255 Proceedings for the United States District Courts. Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or

recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and usually does, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466, 475 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

This the 24th day of May, 2018.

Signed By:
*Robert E. Wier* /s/ REW
United States Magistrate Judge